**JACK IN THE BOX, INC., Plaintiff,**

v.

**JACKINTHEBOX.ORG, and Jackinthebox.Net, Defendants.**

**Civil Action No. 00–913–A.**

United States District Court, E.D. Virginia, Alexandria Division.

May 21, 2001.

David Glenn Barger, Kilpatrick Stockton LLP, Reston, VA, for plaintiff.

*MEMORANDUM OPINION*

HILTON, Chief Judge.

This matter comes before the Court on the report and recommendation of Magistrate Judge Poretz of April 17, 2001, after Plaintiff moved for a default judgment. The Defendant has not filed any objections to the report and recommendation. Based on a *de novo* review of the evidence in this case, the Court adopts the recommendation of the magistrate judge. However, the Court does so for somewhat different reasons than those stated in the magistrate judge's report and recommendation.

This is a civil action against two Internet domain names under the *in rem* provision of the Anticybersquatting Consumer Protect Act, 15 U.S.C. § 1125(d)(2). Plaintiff owns a trademark in "Jack in the Box" for use in several capacities. As found by the magistrate judge, it appears that the domain names <jackinthebox.org> and <jackinthebox.net> were registered by two individuals but never developed into websites. Plaintiff sued *in rem* to seek the transfer of those domain names.

The question presented here is whether the mere act of registering an Internet domain name is sufficient to invoke the protection of the *in rem* provision of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2). The plain terms of the statute clearly state that registration is sufficient for the *in personam* provision of the statute, provided the other requirements of the statute are met. *See* 15 U.S.C. § 1125(d)(1)(A)(ii) ("registers"). The *in rem* provision, however, states that an *in rem* action is permitted if, in addition to other requirements, "the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c) [of 15 U.S.C. § 1125]." 15 U.S.C. § 1125(d)(2)(A)(i). The question, then, is whether the act of registering an Internet domain name (which, as here, is nearly identical to Plaintiff's mark) violates any of the Plaintiff's trademark rights, *see, e.g.,* 15 U.S.C. § 1114(1), or otherwise violates federal trademark law through false designation of origin, false or misleading description of fact, false or misleading misrepresentation of fact, or dilution.

The magistrate judge concluded that the act of registering an Internet domain name does not, by itself, violate any of a mark owner's rights or otherwise violate federal trademark law. However, the magistrate judge borrowed from the language in 15 U.S.C. § 1125(d)(1), the *in personam* provision of the Anticybersquatting Consumer Protection Act, and concluded that mere registration was nevertheless a basis for invoking the protection of the *in rem* prong of the statute. The magistrate judge held that the inclusion of the word "registers" in the *in personam* prong can be carried over into the *in rem* prong. This Court disagrees with that finding.

Any analysis involving statutory construction must begin with the plain terms of the statute itself. *See Chris v. Tenet,* 221 F.3d 648, 651–52 (4th Cir.2000). The *in rem* provision of the statute is quite clear that the *res,* the domain name, must itself violate a right of a mark owner who has registered the mark with the United States Patent and Trademark Office or that is protected by 15 U.S.C. § 1125(a) (false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact) or 15 U.S.C. § 1125(c) (dilution). The *in rem* provision makes no mention of registration *per se* and does not say that the *in person-*

*am* prong of the statute is incorporated by reference. Rather, it points to substantive trademark law as the standard. The magistrate judge concluded that the mere registration of an Internet domain name that is confusingly similar to a trademark does not, by itself, violate substantive trademark law because such an action is not "in commerce."

15 U.S.C. § 1114(1)(a) holds liable any person who, without the consent of the mark owner, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Since this civil action is in default, the facts as stated in the complaint are deemed admitted and true. *See* Fed.R.Civ.P. 8(d). There is no question, therefore, that the domain names in question were registered as such. Except for the ".org" and ".net" suffixes, the domain names are exact replicas of Plaintiff's marks. Based on this fact, and the facts as alleged (and deemed admitted) in the complaint, there is no question that the registration of the domain names in question would lead to confusion, mistake, or deception.

The act of registration was in connection with the sale of the right to use the domain name, arguably either a good or service. This sale (from the domain name registrar to the unknown registrants) constituted "use in commerce." A domain name registrant need not actually develop a working website for the illegal use of the mark to constitute commercial use. The act of registering a domain name is a commercial act

because it involves a sale between the registrant and the registrar.[1] The infringing domain name is used in this commercial act because it itself becomes the good or service that is sold. It thus meets the definition of "use in commerce" under 15 U.S.C. § 1127, 15 U.S.C. § 1114(1)(a), and 15 U.S.C. § 1125.

Because the act of registering the domain names in question violated Plaintiff's rights to its mark, Plaintiff is entitled to relief under 15 U.S.C. § 1125(d)(2), the *in rem* provision of the Anticybersquatting Consumer Protection Act. There is no need for the Court to address the "bad faith" factors in the *in personam* provision of the statute because this action is one *in rem.* This is for the same reason why the term "registers" cannot be "borrowed" into the *in rem* prong from the *in personam* prong. The plain terms of the statute clearly state that the "bad faith" analysis applies only to 15 U.S.C. § 1125(d)(1), the *in personam* prong, not 15 U.S.C. § 1125(d)(2), the *in rem* prong.

An appropriate order shall issue.

### *ORDER*

This matter comes before the Court on the report and recommendation of Magistrate Judge Poretz of April 17, 2001. For the reasons stated in the accompanying memorandum opinion, it is hereby,

ORDERED that default judgment is entered for Plaintiff and the domain names <jackinthebox.org> and <jackinthebox.net> shall be transferred to Plaintiff.

---

**1.** The Court would also apply the same analysis to 15 U.S.C. § 1125(a) (false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact) and 15 U.S.C. § 1125(c) (dilution) and find that the registrant's actions violated those provisions as well.